1

2

3

4

5

6

7

8

9

10

11

12

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

13  WILLIAM OLDRIGHT,                      )      CV F 05 0889 AWI LJO HC
                                          )
14                     Petitioner,        )      FINDINGS AND RECOMMENDATION
                                          )      REGARDING PETITION FOR WRIT OF
15        v.                              )      HABEAS CORPUS
                                          )
16  A. P. KANE, Warden, et al.,           )      [Doc. #1]
                                          )
17                     Respondents.       )
   _____    )

18

19        Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus

20  pursuant to 28 U.S.C. § 2254.  This action has been referred to this court pursuant to 28 U.S.C.

21  § 636(b)(1) and Local Rule 72-302.

22                               **BACKGROUND**[1]

23        Petitioner is currently in the custody of the California Department of Corrections pursuant to

24  a judgment of the Superior Court of California, County of Kern, following his conviction by jury

25  trial on October 17, 1991, of murder in violation of Cal. Penal Code § 187 and use of a firearm

26  during the commission of the offense in violation of Cal. Penal Code § 12022.5(a). Petitioner was

27

28
   _____
        [1]This information is derived from the petition for writ of habeas corpus.

U.S. District Court
E. D. California      cd                        1

1  sentenced to serve an indeterminate prison term of eighteen years to life.

2      On April 5, 2004, a parole suitability hearing was held by the California Board of Prison

3  Terms ("BPT"). At the conclusion of the hearing, the BPT denied parole.

4      On July 8, 2005, Petitioner filed the instant petition for writ of habeas corpus in this Court.

5  The petition for writ of habeas corpus does not challenge the underlying conviction; rather, it

6  challenges the July 8, 2005, decision of the California Board of Prison Terms to deny parole.

7                                **DISCUSSION**

8  I.  Standard of Review

9      On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of

10  1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment.

11  Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008 (1997); Jeffries v. Wood, 114

12  F.3d 1484, 1499 (9th Cir. 1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert.*

13  *denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (1997)

14  (holding AEDPA only applicable to cases filed after statute's enactment).  The instant petition was

15  filed after the enactment of the AEDPA; thus, it is governed by its provisions.

16      Petitioner is in custody of the California Department of Corrections pursuant to a state court

17  judgment. Even though Petitioner is not challenging the underlying state court conviction, 28 U.S.C.

18  § 2254 remains the exclusive vehicle for his habeas petition because he meets the threshold

19  requirement of being in custody pursuant to a state court judgment. White v. Lambert, 370 F.3d

20  1002, 1006 (9th Cir.2004); Sass v. California Board of Prison Terms, 2005 WL 1406100, *2 (E.D.

21  Cal.2005); see 28 U.S.C. § 2254(a) (This Court may entertain a petition for writ of habeas corpus "in

22  behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is

23  in custody in violation of the Constitution or laws or treaties of the United States.").

24      The instant petition is reviewed under the provisions of the Antiterrorism and Effective Death

25  Penalty Act which became effective on April 24, 1996.  Lockyer v. Andrade,  538 U.S. 63, 70

26  (2003).  Under the AEDPA, an application for habeas corpus will not be granted unless the

27  adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable

28  application of, clearly established Federal law, as determined by the Supreme Court of the United

1   States" or "resulted in a decision that was based on an unreasonable determination of the facts in

2   light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); see Lockyer,

3   538 U.S. at 70-71; see Williams, 529 U.S. at 413.

4          As a threshold matter, this Court must "first decide what constitutes 'clearly established

5   Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71,

6   *quoting* 28 U.S.C. § 2254(d)(1).  In ascertaining what is "clearly established Federal law," this Court

7   must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time

8   of the relevant state-court decision." Id., *quoting* Williams, 592 U.S. at 412. "In other words, 'clearly

9   established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by

10  the Supreme Court at the time the state court renders its decision." Id.

11         Finally, this Court must consider whether the state court's decision was "contrary to, or

12  involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at 72,

13  *quoting* 28 U.S.C. § 2254(d)(1). "Under the 'contrary to' clause, a federal habeas court may grant the

14  writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a

15  question of law or if the state court decides a case differently than [the] Court has on a set of

16  materially indistinguishable facts." Williams, 529 U.S. at 413; see also Lockyer, 538 U.S. at 72.

17  "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court

18  identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies

19  that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.

20         "[A] federal court may not issue the writ simply because the court concludes in its

21  independent judgment that the relevant state court decision applied clearly established federal law

22  erroneously or incorrectly.  Rather, that application must also be unreasonable." Id. at 411.  A

23  federal habeas court making the "unreasonable application" inquiry should ask whether the state

24  court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

25         Petitioner has the burden of establishing that the decision of the state court is contrary to or

26  involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle,

27  94 F.3d 1321, 1325 (9th Cir. 1996).  Although only Supreme Court law is binding on the states,

28  Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court

1  decision is objectively unreasonable.  See Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir.2003);

2  Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir.1999).

3      AEDPA requires that we give considerable deference to state court decisions. The state

4  court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). We are bound by a state's

5  interpretation of its own laws. Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir.2002), *cert. denied*, 537

6  U.S. 859 (2002), *rehearing denied*, 537 U.S. 1149 (2003).

7  II.  Subject Matter Jurisdiction

8      Petitioner contends that his federal and state constitutional rights were violated, and he was

9  deprived of liberty without due process of law, when the BPT failed to set a parole release date at his

10  parole hearing on April 5, 2004. Petitioner contends that the language of the California parole

11  statutes creates a presumptive entitlement to, and thus has a liberty interest in, the setting of a parole

12  release date. Because Petitioner is challenging the actions of a state, the Court will proceed under the

13  Fourteenth Amendment.

14      The Fourteenth Amendment provides that "[no] State [shall] deprive any person of life,

15  liberty, or property, without due process of law." U.S. Const. Amend. XIV, § 1.  In certain cases, a

16  state law may create a liberty interest protected by the Constitution. In examining questions of

17  procedural due process, federal courts employ a two-step inquiry: 1) whether there exists a liberty or

18  property interest which has been interfered with by the State, Board of Regents of State Colleges v.

19  Roth, 408 U.S. 564, 571, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); and 2) whether the procedures

20  attendant upon that deprivation were constitutionally sufficient, Hewitt v. Helms, 459 U.S. 460, 472,

21  103 S.Ct. 864, 74 L.Ed.2d 675 (1983), *receded from and rejected on separate grounds*, Sandin v.

22  Conner, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). See Kentucky Dept. of Corrections

23  v. Thompson, 490 U.S. 454, 460, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989).

24      Thus, the first question that must be answered is whether there exists a liberty interest

25  protected by the Due Process Clause. The United States Supreme Court has expressly denied

26  entitlement to a protected liberty interest in parole. Greenholtz v. Inmates of Nebraska Penal and

27  Correctional Complex, 442 U.S. 1, 7 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979) ("There is no

28  constitutional or inherent right of a convicted person to be conditionally released before the

U.S. District Court
E. D. California     cd                           4

1    expiration of a valid sentence.").  "Nevertheless, early release statutes can create a 'liberty interest

2    protected by due process guarantees.'" Bermudez v. Duenas, 936 F.2d 1064, 1067 (9th Cir.1991) (per

3    curiam), *quoting* Greenholtz, 442 U.S. at 12; Board of Pardons v. Allen, 482 U.S. 369, 373 (1987).

4    Moreover, "[a] state may create a constitutionally protected liberty interest by establishing regulatory

5    measures that impose substantive limitations on the exercise of official discretion." Bermudez, 936

6    F.2d at 1067, citing Baumann v. Arizona Dep't of Corrections, 754 F.2d 841, 844 (9th Cir.1985).

7    However, no protected entitlement to release exists unless a state scheme includes a formula which

8    mandates release after the occurrence of specified events.  Baumann, 754 F.2d at 844 (stating that the

9    unique "shall/unless" formula was decisive in Greenholtz). If there exists mandatory language in a

10   parole statute, then Petitioner has a protected liberty interest in parole release. Greenholtz, 442 U.S.

11   at 11-12. If, however, the state merely holds out the possibility of parole, then such a hope is not

12   protected by due process.  Id.; Baumann, 754 F.2d at 844. Therefore, the Court must look to the

13   California parole statutes to determine whether the unique structure and language of those statutes

14   creates an entitlement to parole release or a presumption of expectation of parole release.

15            The relevant California statutory language is contained in Cal. Penal Code § 3041, which

16   states, in relevant part:

17            (a) One year prior to the inmate's minimum eligible parole release date a panel of two or
              more commissioners or deputy commissioners shall again meet with the inmate and *shall*
18            *normally set a parole release date* as provided in Section 3041.5.

19            (b) The panel or the board, sitting en banc, *shall set a release date unless it determines* that
              the gravity of the current convicted offense or offenses, or the timing and gravity of current or
20            past convicted offense or offenses, is such that consideration of the public safety requires a
              more lengthy period of incarceration for this individual, and that a parole date, therefore,
21            cannot be fixed at this meeting . . . .

22   Cal. Penal Code §§ 3041(a), 3041(b) (West 2000) (Emphasis added).

23            The language in Cal. Penal Code § 3041 provides for the possibility of parole.  A release date

24   *shall* be set *unless* the BPT determines that the prisoner should not be released.  The word "shall" is

25   not used in an absolute or mandatory sense. Sass, 2005 WL 1406100, *6. It is qualified or modified

26   in both subsections. Thus, parole is not automatic; it is discretionary.  Nevertheless, the Ninth Circuit

27   Court of Appeals, without the assistance of a definitive California Supreme Court interpretation,

28   found the language in § 3041 to be mandatory. See McQuillion v. Duncan, 306 F.3d 895 (9th

1  Cir.2002).

2       In 2005, in <u>In re Dannenberg</u>, 34 Cal.4th 1061, 1087 (2005), the California Supreme Court

3  provided a definitive interpretation of § 3041's structure and language. In <u>Dannenberg</u>, the California

4  Supreme Court held: 1) the language in § 3041 is not mandatory; 2) there is no right to parole in

5  California; 3) the Board of Prison Terms has extremely broad discretion and is not required to fix a

6  parole date; and 4) the statutory scheme of § 3041 indicates that § 3041(b) extinguishes any

7  expectancy an inmate may have in parole found in § 3041(a). <u>Dannenberg</u>, 34 Cal.4th at 1084, 1087-

8  88, 1097-98; <u>Sass</u>, 2005 WL 1406100, *6.

9       This Court is therefore faced with conflicting interpretations from the Ninth Circuit and the

10  California Supreme Court.  Normally, the Court would defer to the Ninth Circuit's interpretation of

11  the state statute; however, circuit opinions are only persuasive authority. <u>Clark</u>, 331 F.3d at 1069;

12  <u>Duhaime</u>, 200 F.3d at 600-01. On the other hand, "[w]hen a state court has made its own definitive

13  determination as to the meaning of a state statute, federal courts give this finding great weight in

14  determining the natural effect of a statute, and if it is consistent with the statute's reasonable

15  interpretation, it will be deemed conclusive." <u>Sass</u>, 2005 WL 1406100, *6, *citing* <u>Gurley v. Rhoden</u>,

16  421 U.S. 200, 208, 95 S.Ct. 1605, 44 L.Ed.2d 110 (1975); <u>see also</u> <u>Oxborrow v. Eikenberry</u>, 877

17  F.2d 1395, 1399 (9th Cir.), *cert. denied*, 493 U.S. 942 (1989) (Federal courts are bound by state court

18  rulings on questions of state law). As noted by this Court in <u>Sass</u>, the general principle of deference

19  to state court interpretations is compelled by the Supreme Court's clearly established habeas corpus

20  jurisprudence. <u>See</u>, e.g., <u>Greenholtz</u>, 422 U.S. at 12, *citing* <u>Bishop v. Wood</u>, 426 U.S. 341, 345, 346

21  n.10, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976) (demonstrating deference to, and the need for, holdings

22  and interpretations of state supreme courts when establishing interests protected by due process);

23  <u>Allen</u>, 482 U.S. 369, 377 n.8, 107 S.Ct. 2415, 96 L.Ed.2d 303 (1987) (implying that a Montana

24  Supreme Court decision would have been instructive if there had been one on point).

25       Therefore, this Court will defer to the California Supreme Court's interpretation of § 3041 in

26  <u>Dannenberg</u>. The California Supreme Court answers the first question: the language of § 3041 is not

27  mandatory. <u>Dannenberg</u>, 34 Cal.4th at 1087-88. The absolute sense of the word "shall" is eviscerated

28  by the modifications ("shall *normally* set") and qualifications ("shall . . . *unless it determines*")

U.S. District Court
E. D. California    cd        6

1   contained in the subsection. Cal. Penal Code §§ 3041(a), 3041(b) (West 2000) (Emphasis added).

2   Furthermore, "the lack of mandatory language in § 3041, especially when considered in light of 1)

3   California's long standing jurisprudence denying the existence of a parole right, 2) the statutory

4   scheme of § 3041, and 3) the broad discretion given to the BPT under the "noncapital murderers"

5   exception to California's determinant sentencing law, precludes a legitimate expectation of parole

6   release and, thus, does not give rise to an associated liberty interest under clearly established federal

7   law." Sass, 2005 WL 1406100, *7, *citing* Dannenberg, 34 Cal.4th at 1084, 1087-88, 1097-98.

8   Therefore, as this Court held in Sass, "the unique structure and language of § 3041 precludes the

9   finding of a federal liberty interest in parole." Sass, 2005 WL 1406100, *7. Consequently, the state

10  court determination that Petitioner's federal due process rights were not violated at his April 5, 2004,

11  parole hearing was not contrary to or an unreasonable of clearly established federal law. 28 U.S.C.

12  § 2254(d). In addition, because California's parole statutes do not give rise to a protected liberty

13  interest, this Court is without jurisdiction to entertain Petitioner's claims.

14          With respect to Petitioner's claim that the BPT's denial of parole violated Petitioner's state

15  constitutional rights, the claim is not cognizable in a federal habeas action, because generally, issues

16  of state law are not cognizable on federal habeas. Estelle v. McGuire, 502 U.S. 62, 67, (1991) ("We

17  have stated many times that 'federal habeas corpus relief does not lie for errors of state law.' "),

18  *quoting* Lewis v. Jeffers, 497 U.S. 764, 780 (1990); Gilmore v. Taylor, 508 U.S. 333, 348-49 (1993)

19  (O'Connor, J., concurring) ("mere error of state law, one that does not rise to the level of a

20  constitutional violation, may not be corrected on federal habeas").

21  III.  Review in light of Supreme Court's Analysis in Sandin v. Conner

22          Although Petitioner does not claim a violation of his constitutional rights as determined in

23  Sandin v. Conner, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), this Court is aware that

24  Sandin presents another analysis for assessing whether prisoners have a protected liberty interest.

25  In Sandin, the Supreme Court held that "States may under certain circumstances create liberty

26  interests which are protected by the Due Process Clause." 515 U.S. at 483-84. To determine whether

27  there is a state-created liberty interest, the Court must inquire whether the state action "imposes [an]

28  atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id.

1    at 484. As noted by this Court in Sass, however, <u>Sandin</u> "is by no means clearly established in the

2    context of parole rights." <u>Sass</u>, 2005 WL 1406100, *5. In <u>Sandin</u>, the Supreme Court determined

3    whether a prisoner's rights were violated in the context of his conditions of confinement, not the

4    possibility of his release from that confinement. <u>Sandin</u>, 515 U.S. at 480-81. In addition, <u>Sandin</u> did

5    not overrule <u>Greenholtz</u> or <u>Allen</u>. <u>Id</u>. at 483 n.5. Accordingly, <u>Greenholtz</u> and <u>Allen</u> remain

6    controlling law in the context of determining whether Petitioner has a liberty interest in parole.

7    Indeed, the Supreme Court has cited <u>Greenholtz</u> and <u>Allen</u> approvingly following <u>Sandin</u> as

8    examples of cases where state statutes have created liberty interests through the use of mandatory

9    language. See <u>I.N.S. v. St. Cyr</u>, 533 U.S. 289, 345-46, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001).

10        In any case, Petitioner does not have a protected liberty interest even if Sandin were applied.

11   As correctly noted by Respondent, every California prisoner serving an indeterminate prison term is

12   subject to the statutory maximum term unless the BPT fixes a shorter term. See <u>Dannenberg</u>, 34

13   Cal.4th at 1097-98. Therefore, the BPT's denial of parole cannot possibly impose an "atypical or

14   significant hardship on the inmate in relation to the ordinary incidents of prison life." <u>Sandin</u>, 515

15   U.S. at 484. Consequently, California's parole statutes do not give rise to a protected liberty interest

16   under the Supreme Court's test in <u>Sandin</u>.

### RECOMMENDATION

18        Accordingly, the Court hereby RECOMMENDS that the petition for writ of habeas corpus be

19   DENIED with prejudice and the Clerk of Court be DIRECTED to enter judgment.

20        This Findings and Recommendation is submitted to the Honorable Anthony W. Ishii, United

21   States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule

22   72-304 of the Local Rules of Practice for the United States District Court, Eastern District of

23   California.

24        Within thirty (30) days after being served with a copy, any party may file written objections

25   with the court and serve a copy on all parties.  Such a document should be captioned "Objections to

26   Magistrate Judge's Findings and Recommendation."  Replies to the objections shall be served and

27   filed within ten (10) <u>court</u> days (plus three days if served by mail) after service of the objections.

28   The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The

1    parties are advised that failure to file objections within the specified time may waive the right to

2    appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

3    IT IS SO ORDERED.

4    **Dated:      August 21, 2005**                          **/s/ Lawrence J. O'Neill**
     b9ed48                                          UNITED STATES MAGISTRATE JUDGE

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

U.S. District Court
E. D. California        cd